OPINION
PER CURIAM.
Appellant Martin Armstrong, a federal prisoner incarcerated at the Federal Correctional Institution at Fort Dix, New Jersey, filed a pro se petition for writ of habeas corpus, 28 U.S.C. § 2241, in the United States District Court for the District of New Jersey on January 28, 2008. This appeal was taken from the District Court’s Order, dismissing Armstrong’s petition for failure to exhaust administrative remedies. Finding no error, we will affirm.
The matter arises out of Armstrong’s confinement as a civil contemnor, in civil securities fraud actions brought by the Securities and Exchange Commission and Commodity Futures Trading Commission, and his criminal prosecution for securities fraud and related offenses, the histories of which are set forth in the opinion of the United States Court of Appeals for the Second Circuit in Armstrong v. Guccione, 470 F.3d 89 (2d Cir.2006), cert. denied, 552 U.S. 989, 128 S.Ct. 486, 169 L.Ed.2d 338 (2007). On April 10, 2007, Armstrong was sentenced in the Southern District of New York to a term of imprisonment of 60 months following his conviction for conspiracy to commit fraud in violation of 18 U.S.C. § 371. However, commencing on January 14, 2000, Armstrong was incarcerated for civil contempt by a different federal judge in the same district for refusing to comply with an order entered in the civil fraud actions requiring him to produce corporate assets and records. While he was still in custody for civil contempt, Armstrong sought habeas corpus relief in the Southern District of New York. That court denied his motion for bail, and denied his petition for writ of habeas corpus. The Court of Appeals affirmed, holding that the length of Armstrong’s imprisonment did not violate his due process rights, because his refusal to comply was based on his willingness to suffer jail time in the hope of ending up in possession of the property. Id. at 110-11.
In the instant New Jersey habeas corpus case, filed after he was no longer in custody for civil contempt, Armstrong raised a number of claims, some sounding in civil rights, but he also raised a habeas *830 claim that he was entitled to a credit against his present criminal sentence for the time spent in jail under the civil contempt order. The District Court reviewed the petition, and filed an Opinion and Order on February 14, 2008, dismissing all of Armstrong’s civil rights claims without prejudice. In pertinent part, the court directed Armstrong to comply with the Prison Litigation Reform Act and file a separate action raising his ripe civil rights claims. The court explained the venue provisions and requirements for civil rights actions for Armstrong’s benefit. The court also noted that certain other of Armstrong’s civil rights claims for damages for illegal confinement were barred under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because neither the contempt finding nor the securities fraud conviction had ever been invalidated.[1]
Noting that a habeas corpus action (and not mandamus) was the proper remedy to redress the sentence calculation claim, the District Court then directed respondent Jeff Grondolsky, the Warden at FCI-Fort Dix, to file an answer to Armstrong’s sentence calculation claim that he was entitled to a credit against his criminal sentence for the time spent confined under a civil contempt order. The Warden filed a motion to dismiss the habeas corpus petition due to Armstrong’s failure to exhaust his administrative remedies prior to filing the petition. In support of the motion, he relied upon the Declaration of Tara Moran, and the Declaration of J. Andrew Ru-ymann, and certain exhibits. Armstrong submitted a written response in opposition. The District Court then dismissed the sentence calculation claim for failure to exhaust administrative remedies, reasoning that the Bureau of Prison’s Administrative Remedy Program was available to Armstrong, and he failed to make use of it. Furthermore, he offered no explanation for his failure in this regard. Armstrong appeals.
We will affirm. We have jurisdiction under 28 U.S.C. § 1291. The authority to calculate a federal prisoner’s release date for the sentence imposed, and to provide credit for pre-sentence detention and good conduct, is delegated to the Attorney General, who acts through the Bureau of Prisons. See United States v. Wilson, 503 U.S. 329, 334-35, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). Credit for time served on a pre-existing state sentence, on the other hand, is within the exclusive power of the sentencing court, see Ruggiano v. Reish, 307 F.3d 121, 132 (3d Cir. 2002), and multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently, 18 U.S.C. § 3584(a). We may correct a sentence calculation error by the BOP through a *831 writ of habeas corpus where that error is fundamental and carries a serious potential for a miscarriage of justice. See Barden v. Keohane, 921 F.2d 476, 479 (3d Cir.1990).
Armstrong contends that, under 18 U.S.C. § 3585(b), the BOP is required to give him credit against his current 60-month sentence for the seven years he spent in jail for civil contempt.[2] See also 18 U.S.C. § 4001(a) (“No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.”). However, the BOP has applied Program Statement 5880.28 to his situation to deny him any credit at all against his current sentence. We note that Program Statement 5880.28 addresses the relationship between civil contempt commitment orders and criminal sentences, and would appear to operate to deny Armstrong the credit he seeks, just as he asserts, as follows:
Time spent serving a civil contempt sentence prior to trial and/or sentencing does not constitute presentence time credit toward the sentence that is eventually imposed.
Time spent serving a civil contempt sentence does not constitute presentence time credit toward any criminal sentence that has been interrupted by, or that is running along concurrently with, or that is to be served consecutively to, the criminal sentence.
Department of Justice, Federal Bureau of Prisons Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), pp. 1-15A-1-16 (Feb. 14,1997).
Armstrong raises a number of arguments in his brief on appeal concerning the validity of Program Statement 5880.28 and the maximum amount of time Congress authorized for a conviction for securities fraud. Nevertheless, as the District Court explained, administrative remedies must be exhausted prior to filing a federal habeas corpus petition challenging the execution of a sentence. Federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir.1996). See also Wilson, 503 U.S. at 335-36, 112 S.Ct. 1351 (noting with approval the BOP’s administrative remedy process). Armstrong does not dispute that he never filed an administrative remedy request after he received his criminal sentence, or any remedy request concerning the calculation of his federal sentence and his alleged entitlement to a credit towards that sentence.
Armstrong argues in his brief on appeal that his claim is “constitutional” and thus he may bypass administrative remedies, but his claim concerns the possibility of tension between Program Statement 5880.28 and 18 U.S.C. § 3585(b) (and/or § 4001(a)), and the BOP’s authority to promulgate Program Statement 5880.28, and is not atypical such that it cannot be addressed through the BOP’s Administrative Remedy Program. One of the purposes of administrative review is to foster administrative autonomy by giving the agency an opportunity to correct its own errors, see Bradshaw v. Carlson, 682 F.2d 1050, 1052 *832 (3d Cir.1981). “[Circumvention of the administrative process diminishes the effectiveness of the agency by encouraging prisoners to ignore its procedures.” Sanchez v. Miller, 792 F.2d 694, 699 (7th Cir. 1986) (citing McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)). Ironically, Armstrong has complained in his brief on appeal that the “District Court failed to compel the BOP to explain its theory,” Appellant’s Brief, at 20, but, had he pursued the administrative remedy process to a final review by the National Appeals Administrator in the Central Office, he no doubt would have gotten the explanation he seeks..
Exhausting administrative remedies also allows the agency to develop a factual record that will later facilitate judicial review. Bradshaw, 682 F.2d at 1052. The importance of the development of an accurate factual record where sentence computation is at issue cannot be overstated. Here, the record did not permit the District Court to establish as a matter of fact when Armstrong’s incarceration for civil contempt ended. See District Court Opinion, 2/14/08, at 7-8 & n. 5, 2008 WL 442111. The court could do nothing more than, on its own, take notice of a docket entry in Armstrong’s criminal case, United States v. Armstrong, D.C.Crim. No.99-cr-00997, from April 27, 2007 (unnumbered docket entry following Dkt # 164), which pm-ported to record an oral order rendered on that same day by the federal judge who incarcerated Armstrong for civil contempt. It indicated that Armstrong’s civil confinement was to cease immediately.[3] But even if this docket entry is accurate, the District Court should not have to conduct its own investigation into the material facts. Furthermore, the undeveloped record in this case does not provide information on other issues of possible concern, such as whether the sentencing court, in imposing the 60-month term of imprisonment, took into consideration the lengthy period of civil confinement, or whether the BOP would consider the view of the sentencing court to have any bearing on the application of Program Statement 5880.28.
Armstrong believes that, because the BOP’s response to his request for credit is a foregone conclusion under Program Statement 5880.28, he should not have to initiate a claim for the credit he seeks under the BOP’s three-tier administrative remedy program. We disagree. The federal regulations provide a multi-level review process that a federal prisoner may use in order to seek formal review of an issue relating to any aspect of his confinement, including the calculation of his sentence. 28 C.F.R. §§ 542.10 et seq. Because the BOP permits administrative review of its sentence calculations, and because there is no indication that Armstrong was foreclosed from seeking such a review prior to his initiation of this action, the requirement to first exhaust his administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 applies to him. Prior to his sentencing, and while he was incarcerated for civil contempt, he filed a petition for writ of habeas corpus in the Southern District of New York seeking relief for the anticipated refusal to credit him against his criminal sentence. See Armstrong v. Lappin, D.C. Civ. No. 07-2573 (S.D.N.Y.). The court dismissed the petition as premature and alerted Armstrong to the need to first exhaust his adminis *833 trative remedies through the BOP, advice he chose to ignore.
Armstrong contends in his brief on appeal that the District Court improperly-applied the Prison Litigation Reform Act to his habeas corpus petition. This is a miseharacterization of the District Court’s decision. The court properly applied the PLRA to Armstrong’s Bivens claims, see Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000), and directed him to file them in a separate complaint with due regard to venue considerations, a decision we affirm, but the court did not apply the PLRA to Armstrong’s habeas corpus case. The requirement applied in Armstrong’s case to exhaust administrative remedies prior to challenging through 28 U.S.C. § 2241 the execution of his sentence is a well-established judicial doctrine. See McKart, 395 U.S. at 193, 89 S.Ct. 1657; see also Moscato, 98 F.3d at 760; Bradshaw, 682 F.2d at 1052.
We will affirm the District Court’s Order dismissing the habeas corpus petition for failure to exhaust administrative remedies. The court’s other rulings, to the extent they are now before us, also are affirmed.[4] Armstrong’s motion to proceed on the original record is granted. All other motions listed in the Clerk’s Orders of March 19, 2009 and May 15, 2009 are denied.

. In pertinent part, the District Court identified these essential claims: (1) BOP Regional Director Scott Dodrill violated his rights under 42 U.S.C. § 1985 and § 1986 by permitting his wrongful confinement as a civil con-temnor and Warden Grondolsky joined in the conspiracy; (2) a writ of mandamus pursuant to 28 U.S.C. § 1361 should issue to compel the respondents to credit his criminal sentence for the time spent confined as a civil contemnor; (3) a permanent injunction should issue against any further imprisonment as a civil contemnor; (4) he is entitled to damages under the Eighth Amendment and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for the confinement as a civil contemnor in the New York Metropolitan Correctional Center between January 14, 2000 and April 10, 2007; and (6) he is entitled to damages under Bivens for an assault on May 10, 2007 while he was confined at the Metropolitan Correctional Center, and for prison authorities' failure to provide medical attention. The District Court properly disposed of these claims. We will affirm, and not discuss them separately.

. The statute provides:
(b) Credit for prior custody. — A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
(1) as a result of the offense for which the sentence was imposed; or
(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.
18 U.S.C. § 3585(b).

. With respect to the issue of whether the sentencing court expressed any view at all about the credit issue, we note further that criminal docket entry no. 150 purports to record the Criminal Judgment, and it indicates that the sentencing court stated: “The above [60-month] sentence will commence as soon as the contempt case before Judge Castel is resolved.”

. Armstrong separately appealed the District Court’s order of February 14, 2008 to the extent the court denied his motion for bail or for immediate change in custody to home confinement. We affirmed in Armstrong v. Grondolsky, 290 Fed.Appx. 451, 452-53 (3d Cir.2008) (assuming jurisdiction under the collateral order doctrine).